## WHITE v. STATE.

(In Banc. April 14, 1941. Suggestion of Error Overruled, May 12, 1941.)

[1 So. (2d) 500. No. 34423.]

Earle L. Wingo, of Hattiesburg, for appellant.

**A. M. Byrd,** Assistant Attorney-General, for appellee.

Argued orally by **Earle L. Wingo**, for appellant, and by **A. M. Byrd**, for the State.

**McGehee, J.**, delivered the opinion of the court.

The principal assignment of error on appeal in this case is the refusal of the trial court to grant the appellant a change of venue from Neshoba County to some other convenient County to be tried under the indictment charging him with the crime of murder. It is conceded that the law is well settled under the previous decisions of this Court that the granting or refusal of a change of venue is within the sound discretion of the trial judge, and that his action in this behalf does not constitute reversible error where the evidence offered on the motion is conflicting, unless there has been a clear abuse of such discretion. It is necessary to a clear understanding of the considerations which entered into the determination of that issue before the trial court that we first state the facts and circumstances of the case.

It appears from the evidence that the appellant was interested in the operation of certain places of business in Neshoba County where pinball machines and nickelodeons were displayed and where whisky was sold. The deceased, Sam McCune, was the agent and representative of the Mississippi Vending Machine Company which handled similar machines, and which company was in competition with the appellant to the extent of the maintenance and operation of such machines in the county.

It was shown by the evidence on behalf of the state that on the morning of the homicide, which occurred in a place of business being operated by one Emmett Daniels under a lease from the appellant and in the name of the "Blue Goose," located about three miles from the City of Philadelphia, the appellant accosted McCune on the streets of Philadelphia, called him to his automobile, commanded him to get in the car, and drove to the Blue Goose, where the appellant upon entering the place or-

dered a bottle of coca cola and two glasses containing ice; that he thereupon took from the counter a half pint of whisky, poured some of it into each of the glasses with the ice and coca cola, and then drank the contents of one of the glasses; that when McCune declined to drink the contents of the other glass and assigned as a reason for his failure to do so that he had to work, the appellant dashed it into his face, and soon thereafter informed McCune that he would have to go with the appellant to Meridian that day; that McCune again demurred on the ground that he would have to work, when the appellant told him he would bet him five hundred dollars to five that he would go, that thereupon the appellant stated to McCune that he would like to sell him a nickelodeon which was then stationed there in the Blue Goose; that McCune replied that he did not need the machine, but that he would give him a man's address in Memphis who was buying up that particular type of machine; that thereupon the appellant stated to McCune that, "You think you are damned smart in placing two of your machines by one of mine in Louisville," and that, "You can't come into Neshoba County and put in your machines, without cutting me in on it; unless you cut me in for 10%;" that McCune then stated that he had put in the machines at Louisville because he was asked to do so; that they then walked over to the nickelodeon where one of them undertook to put a coin in it, and that the coin fell to the floor; that when McCune started to pick up the coin he observed that the appellant had a pistol in his hand, and that when McCune then hesitated about picking up the coin, the appellant said, "Hell, I'm not going to kill you." Thereupon, McCune urged the appellant to put up the pistol, and it was then discharged into the floor within about an inch and a half of McCune's foot; thereupon McCune began backing toward the door pleading with the appellant, in tears and much anxiety, to put up the pistol. Thereupon, the second shot was fired by the appellant, the bullet entering McCune's head,

from which wound he never regained consciousness. The eye-witness, Emmett Daniels, who testified to all of the foregoing facts, says that he was looking at McCune when the fatal shot was fired, and did not therefore see the appellant aim the pistol toward him, but when he looked again toward him he was holding it in his hand at his hip, and was standing at a distance of about three feet away.

From the facts above stated, and which were wholly undisputed by any witness, it will be readily seen that the jury was amply warranted by the evidence in finding that beyond any reasonable doubt the shooting was wilfully and deliberately done; that it neither happened through any culpable negligence of the appellant so as to constitute manslaughter, nor was it in any sense accidental on the part of the deceased, as first reported to the sheriff by the eye-witness, Emmett Daniels, under circumstances hereinafter stated. That is to say, the jury was also warranted in believing from the evidence that immediately after the shooting, the appellant, while still holding pistol in his hand, warned the witness Daniels that he would kill him unless he said that the man had killed himself accidentally, and that therefore the witness at first so reported the homicide to the sheriff immediately thereafter as an accident. Although it is true that the witness later changed his version of what occurred and testified to the facts hereinbefore set forth, the record fails to disclose that he had any other motive in doing so after becoming free of the influence of the alleged threat and intimidation, than to correctly state what he had seen and heard. He had never seen the deceased before and had no reason to want to color his testimony on the trial to the injury and prejudice of his friend, the appellant.

The testimony of a witness for the state as to whether a previous threat had been made by the appellant against the deceased, and of another one who was present at the Blue Goose on the morning of the killing, and who corrob-

orated the story of Emmett Daniels, claiming to have been in a position to see all that occurred, is seriously contradicted. But that testimony may be disregarded as of no probative value on behalf of the state, for the purposes of this decision, since no witness undertook to dispute the version of the tragedy as given by the witness, Emmett Daniels. Moreover, the appellant offered no proof in support of his contention that the offence was no greater than the crime of manslaughter or that the killing was accidental.

As to whether the appellant was entitled to a change of venue, the record discloses that on the next night after the appellant was taken in custody at the scene of the homicide, some unknown persons burned the Blue Goose, and that thereupon the sheriff removed his prisoner from Philadelphia to the Hinds County jail at Jackson for safekeeping, upon the suggestion and request of the appellant's sister and a local attorney. The homicide occurred on July 29, 1940, and the trial was not had until the latter part of September of that year. The motion for a change of venue was supported by the necessary statutory affidavits which alleged that because of ill will and pre-judgment of the case the appellant would be unable to obtain a fair and impartial trial in Neshoba County where the killing occurred. In response to the motion the state introduced the eighteen members of the grand jury which had returned the bill of indictment. These witnesses came from the various communities throughout the county, and testified in substance that there was no sentiment of ill will or pre-judgment of the case against the appellant in their respective communities, and that in their opinion he would be able to obtain a fair and impartial trial. Some of these witnesses stated that any excitement or manifestation of interest that may have prevailed at the time of the homicide had subsided, and that there had been practically no discussion of the case among their friends and neighbors within the few weeks immediately preceding the trial. The appellant in-

troduced several witnesses who testified to the contrary. Upon this conflict in the proof the trial court held that the change of venue should be denied. Thereafter a special venire of a hundred men were summoned for the selection of a jury, and when the special veniremen appeared there were also in attendance the two regular juries for the week. Thereupon, the appellant obtained a subpoena duces tecum for Mr. Silas Redd, manager of the Mississippi Vending Machine Company, the employer of the deceased, so as to obtain from the witness in advance of the examination of the special veniremen a disclosure of the names of the contributors to a fund which is alleged to have been raised to aid in the prosecution of the case, so as to enable counsel for appellant to be fully advised in that regard in the selection of the jury. The Court declined to require Mr. Redd to furnish the names of the contributors of the money, which he admitted having received, but offered to permit counsel to ask him whether any of the prospective jurors had made any of the contributions. Thereupon the inquiry was pursued no further in the examination of this witness. The failure of the Court to require the witness to divulge the names of the contributors and the amounts paid by each of them is assigned as error. No case is called to our attention which holds that this ruling of the Court unduly restricted the inquiry here sought to be made. On the contrary, there is cited on behalf of the state the cases of Barkman v. State (Tex. Cr. App.), 52 S. W. 69, and McGee v. State, 37 Tex. Cr. Rep. 668, 40 S. W. 967, wherein the Court approved the refusal of the trial court to grant requests of the defendants to require the state to divulge such information. Under the circumstances, we are of the opinion that the failure of the Court to require the witness to divulge more than the fact of whether or not any of the prospective jurors had contributed to the fund in question does not constitute reversible error.

Subsequent to the ruling above referred to, the Court proceeded with the selection of the jury. Thereupon the

appellant's counsel, Mr. Wingo, of Hattiesburg, Mississippi, noticed that the only local attorney who was to aid in the defense of the case was not in the courtroom. There was then handed to him a letter which was sent to the courtroom from the office of the local attorney wherein the addressee was advised that such local attorney had withdrawn from further connection with the case on account of objections which had been registered by his own people residing in Philadelphia—his relatives we presume—and in which letter it was stated that the attorney was leaving for Louisville, and that this action was being taken "in order to keep down possible serious trouble." It also contained a request that Mr. Wingo should not say anything about the incident until the local attorney could confer with him in person. The trial judge was not therefore advised at that time of the receipt of this letter. It appears that only two members of the local bar at Philadelphia had been employed to aid the district attorney and county attorney in the prosecution of the case. The appellant was born and reared in that county, and it does not appear whether any effort was made to secure other local counsel to aid the defense in the selection of the jury and the trial of the case, after the withdrawal of the one above referred to. After the jury was finally accepted on that day by both the state and the defendant, there was presented on the following morning a supplemental motion for a change of venue which recited the refusal of the court to require Mr. Redd to divulge the names of the contributors to the fund for the prosecution as aforesaid, and in which the court was also apprised of the circumstances under which the local attorney had withdrawn from the case on the previous day. No proof was offered on the supplemental motion, but we must presume that the court took into consideration the facts thus stated of which he had personal knowledge, as well as the further information contained in the application. The action of the court in

overruling this supplemental motion is likewise assigned as error.

The voir dire examination of the jurors is not disclosed by the record before us. It does disclose that the appellant excused only two jurors for cause and exhausted nine or ten of his peremptory challenges. It was necessary to examine only seventy-one out of the total one hundred and twenty-four prospective jurors in the selection of the jury. Under the previous decisions of this Court it is not reversible error to overrule a motion for a change of venue where the evidence upon the motion is conflicting as to whether or not the defendant could obtain a fair and impartial trial in the county where the the indictment has been returned, and where neither the voir dire examination of the jurors is shown, nor all of the peremptory challenges allowed to the defendant have been exhausted. In such case, the Court must assume that a proper jury was selected. Cummins v. State, 144 Miss. 634, 110 So. 206; Garrett v. State, 187 Miss. 441, 193 So. 452. In the Garrett case, supra, a much stronger case for change of venue was shown than in the case at bar. The motion was denied and the conviction was upheld by this Court, upon the ground that, in the opinion of the Court, a fair jury could not reach any other conclusion than that of guilt. Such, in our opinion, is the case here, when we consider that the proof to sustain the charge of murder stands undisputed. As to whether a fair jury in a county other than Neshoba, where the appellant lived, would have refrained from inflicting the death penalty is of course a mere matter of conjecture.

After a careful examination of the reported cases dealing with the right to a change of venue, we are unable to say that there was any abuse by the trial court of its sound judicial discretion in overruling the motion in this case, even if we were of the opinion that it would have been proper to sustain it.

It was also urged in support of the motion for change of venue that the public interest in the trial was such as to cause the courtroom to be crowded to its fullest capacity throughout the trial, and even on the hearing of the motion. The record discloses, however, that this condition was not at all unusual as compared with the attendance of the people at court in that county when any murder case was being tried. In other words, that this situation did not evidence any ill will or pre-judgment of the case on the part of the general public.

All instructions requested by the appellant were granted. While certain instructions granted in favor of the state are assigned as error, we find that they were given in the exact language of subsections (a) and (b) of Section 985, Code of 1930, defining the crime of murder, except that immediately following the definition of murder under subsection (b) of the Code, there was added in one of them the language "and the Court further instructs the jury that if you believe beyond a reasonable doubt that the defendant, at the time and place testified about, so killed the deceased, he would be guilty of murder, and the jury should so find." The technique of this instruction is complained of, but we find no fault with it.

No complaint is made in regard to the admission of any of the evidence introduced by the state, nor as to the rejection of any evidence offered by the appellant.

For the reasons hereinbefore stated, it necessarily follows that the judgment rendered and the sentence of death imposed by the court below must be affirmed, and Thursday, the 15th of May, A. D., 1941, is hereby fixed as the date for the execution.

Affirmed.